ALBERT BOEVING, APPELLANT, v. ARCH VANDOVER, D/B/A VANDOVER MOTOR COMPANY, RESPONDENT.—218 S. W. (2d) 175.

Springfield Court of Appeals. January 20, 1949.

Rehearing Denied March 11, 1949.

*Phillips & Phillips* for appellant.

120

*Byron Kearby* for respondent.

124

McDOWELL, J.—This is an appeal from a judgment denying specific performance on an oral contract for the purchase of an automobile.

The petition states that defendant is a Buick automobile dealer in Poplar Bluff, Missouri, doing business under the name of Vandover Motor Company; that plaintiff and defendant entered into an oral contract on the 7th day of November, 1945, wherein defendant agreed to sell plaintiff the 13th new Buick passenger automobile that would come into his possession after the date of purchase for the market price thereof, and that plaintiff deposited with the defendant $100.00 as part of the purchase price of said car; that defendant received the 13th Buick automobile on the last of August or the first of September, 1946, but refused to deliver the car to plaintiff unless plaintiff sell his used car to defendant as part of the purchase price. The petition states that plaintiff offered to pay the balance of the agreed purchase price to the defendant, in cash, which offer the defendant refused.

Plaintiff pleads that he has no adequate remedy at law and asks specific performance and damages for the failure to carry out the contract.

Defendant, in his answer, admits plaintiff made a deposit of $100.00 on the 7th of November, 1945, but denies that he agreed to deliver the 13th car or the 21st car, as contended by plaintiff, and pleads that no fixed time was required of defendant to deliver plaintiff a new Buick automobile and defendant pleads that plaintiff, at the time, agreed to trade in his special Buick sedan at the price to be agreed upon between the parties when defendant delivered the new car.

We find the facts to be as follows: On November 7th, 1945, plaintiff deposited with defendant's agent, Arch Vandover, Jr., $100.00 on the purchase price of a new Buick automobile, and received a receipt reading as follows: "No.——11-7-45. Received of Albert Boeving, One Hundred & no/100 Dollars, deposit on new Buick—Vandover Motor Company, Highway 67, South, Poplar Bluff, Mo. $100.00. Archie." The order was to be filled when his number was reached according to date placed. No specifications as to kind, color or style of Buick was designated at the time the deposit was made. The purchase price was to be the current market price at the time it was received. We find that three or four months after the deposit was made defendant notified plaintiff he was to receive the 13th car and that if any of the applicants withdrew plaintiff's number was to be moved up.

About September 1st, 1946, defendant received a 1946 Buick automobile, model 56S Sedanette, known as a Super model, and notified plaintiff that he was ready to deliver it to him. The delivery price of this car at that time was $1855.87. This car was actually the 12th car according to order. Plaintiff and his wife went to the defendant's place of business, his wife examined the car, they were satisfied with it and agreed to take the same. Plaintiff offered to pay defendant the balance of the purchase price in cash, but defendant demanded that plaintiff turn his used car in on the trade at a value of $835.00. Plain-

tiff wanted to keep his used car and defendant offered to re-sell the used car to plaintiff, in its present condition for Eleven Hundred Ninety Dollars ($1190.00). Plaintiff refused this offer. Defendant then informed plaintiff that if he insisted on a car, without a trade-in, he would have to wait until the 21st car was received. To this plaintiff agreed. The 21st car was received about November 7th, 1946. Defendant never offered plaintiff any other car and when plaintiff inquired about when he would receive a car, defendant asked him if he had changed his mind about a trade-in. In February, 1947, plaintiff again asked defendant about the car and defendant informed him that he heard he was going to sue him, and if he wanted to sue, to go ahead. Defendant tendered the $100.00 payment into court, for plaintiff, April 15th, 1947.

We find that at the time plaintiff placed his order with the defendant for a new car it was impossible to buy a car for immediate delivery without going on the black market and paying a bonus; that if plaintiff lost his priority with defendant he would be forced to place his order with some other Buick agency and await his turn, which might take from one to two years. This condition was brought about by the inability of the manufacturers to furnish their dealers with cars sufficient to meet the demand.

We find from the evidence that the defendant, during the time plaintiff's order was pending, sold new Buick automobiles for cash and also cars which he took in trade-ins and that plaintiff was not a regular customer of the defendant.

Defendant received between three and four cars a month from the manufacturers.

To properly understand the finding of the trial court we set out the judgment as follows: "The Court further finds that it would be impossible for this Court to decree specific performance of a contract so vague in its terms and upon which there was no more meeting of the minds than the alleged contract in question. (As an example, if this Court would decree that defendant deliver to plaintiff the next Buick automobile received by them, would the plaintiff want it if it was a bright red color, or would he want it if it was a station wagon, or would he want it if it was a special series, or would he rather have a roadmaster or super series?)

"The Court further finds that this suit is for the specific performance of personal property of which there might be a shortage at the present time, yet the plaintiff is able to purchase on the open market and if he has an action at all same would be compensable by an action at law and therefore equity should not be called upon to adjudge specific performance.

"The Court further finds that plaintiff did deposit with defendant the sum of One Hundred Dollars ($100.00) and that this suit was filed February 25, 1947, and service was had on February 26, 1947,

but that defendant did not offer or tender back to plaintiff the One Hundred Dollars ($100.00) deposited until defendant's amended answer of April 15, 1947, at which time defendant deposited said sum of One Hundred Dollars ($100.00) with the Clerk of this Court, and that therefore defendant should be liable for all cost accruing in this cause up to and including the 15th day of April, 1947.

"Wherefore, it is ordered, adjudged and decreed that plaintiff's petition be dismissed for want of equity and that plaintiff recover nothing of and from the defendant by virtue of his petition and cause of action."

This is an equity case and it is our duty to try it de novo, lending due deference to the findings of the trial court.   Lustenberger v. Hutchinson, 119 S. W. 2d 921, 926.

Under appellant's assignment of errors from 2 to 14, inclusive, he complains that the court erred in finding that plaintiff had an adequate remedy at law and therefore equity should not be called upon to adjudge specific performance.  We think that we can dispose of all these different assignments of error under one heading. We cannot agree with the lower court that under the facts in this case plaintiff had an adequate remedy at law.   It is true that equity will not interfere where there is an adequate remedy at law for damages, but we quote what we believe to be a proper construction of the law under the facts in this case from a very recent Supreme Court decision of the State of Kansas, Heidner vs. The Hewitt Chevrolet Company, a Corporation.   This citation is case No. 37,207, in the Supreme Court of Kansas, which is not yet officially reported.   The court said: "If, however, it is made to appear to the court that like chattels cannot be readily purchased on the market at the times specified in the contract for the delivery of the chattels, specific performance will generally be granted if the other necessary elements are present." 49 Am. Jur. 148-9, Sec. 126.   In the case before us plaintiff paid to the defendant and he accepted a deposit of $100.00 on the purchase price of a new Buick automobile.   The very fact that he was assigned a number 13 and required to wait for delivery of such car until the first of September, 1946, which was approximately ten months from the date the order was placed, shows how difficult it was to purchase the kind of car plaintiff desired on the open market.   The further fact that defendant refused to accept payment in cash for said car and demanded a trade-in is an indication of the scarcity of automobiles on the open market.   The Supreme Court of Kansas, in its opinion in a similar case, stated: "We take judicial notice of the fact that cars of the type and kind involved in this lawsuit were scarce and difficult to obtain for cash alone on the open market at the time in controversy."   31 C. J. S. 674.   The evidence shows in this case that plaintiff could not go upon the open market and purchase at the regular price an automobile of the kind and character

involved in the case herein. If he could buy such a car he would have to go on the black market and pay a bonus, possibly illegally.

Under the facts plaintiff desired this car to be used in his business and for social duties. It certainly could not be obtained elsewhere except at considerable expense, trouble or loss, which cannot be estimated in advance and under such circumstances he did not have an adequate remedy at law. 58 C. J. 1039, Par. 259; 30 C. J. S. 347; Heidner vs. Hewitt Chevrolet Company, No. 37,207, Supreme Court of Kansas, supra; 30 C. J. S. 356, Sec. 29-b. "Thus where there is no adequate remedy at law, specific performance of a contract relating to personalty will be decreed * * *." 58 C. J. 1036; Hunter v. Quaintance, 168 Pac. 918.

We find, under the facts in this case, that there was no adequate remedy at law and if the contract is definite and enforceable, equity will lend its hand in enforcing the same.

The lower court found that the agreement upon which this suit is based was so vague and indefinite as to be incapable of enforcing and the court said, in his opinion denying relief in this case, that he could not decree specific performance because the contract was so vague in its terms and that there was no meeting of the minds.

We find the facts in the case to be that on November 7th, 1945, the plaintiff deposited with defendant $100.00 in order that he might receive a preference in the purchase of an automobile when available. No specific model was mentioned at the time plaintiff made the deposit. On or about the first of September, 1946, defendant called plaintiff's home and notified him that his car had come as ordered. Plaintiff and his wife went to the defendant's place of business, plaintiff's wife examined the car, they talked to the representative of the defendant, and stated to him that the car was satisfactory and offered to take it. Plaintiff, at that time, tendered the balance of the purchase price in cash. Defendant offered to deliver the car to plaintiff provided he would trade in his old car for $835.00, which plaintiff refused to do. The facts show that the plaintiff was ready, willing and able to pay the defendant the purchase price of the new car shown him. The only reason that the trade was not carried out was because defendant demanded a trade-in.

On November 7th, 1945, the time the contract was made and the deposit given, nothing was said about plaintiff trading in his old car.

The trial court found that the agreement upon which the suit is based was evidenced by the receipt, dated November 7th, 1945. The court held that such agreement was indefinite as to type, style, series, color, date of delivery and purchase price, and that said oral agreement was so vague and indefinite as to be incapable of enforcing. The court further held that because of the vagueness of the contract, there was no meeting of the minds.

This identical question, almost in the exact words, was before the Supreme Court of Kansas in the case of Heidner v. Hewitt Chevrolet Company, a corporation, supra, and I quote from this opinion:

"As a conclusion of law, the District Court found that the original receipt was not specific or definite enough to create a contract between the parties and that the minds of the parties did not meet on any contract on January 8th, 1946, and no specific contract can be implied from what occurred on that date. Apparently the District Court did not give any consideration to what occurred about July 21st, 1947, which was the time a car satisfactory to plaintiff was shown to him by the defendant and plaintiff offered to accept the same.

"Equity will determine the enforceability of a contract as to certainty, completeness and mutuality as of the date of demand for specific performance or at the time suit is filed rather than at an earlier date. If the contract is certain, complete and has mutuality on the day remedy is invoked or suit is filed, specific performance will be refused because of a lack of completeness, certainty and mutuality at a prior date. Zelleken v. Lynch, 80 Kan. 746, 104 P. 563, 46 L. R. A., N. S., 659; Marsh v. Brown-Crummer Inv. Co., 138 Kan. 123, 23 P. 2d 465, 88 A. L. R. 835; State Highway Comm. of Kansas v. Ames, 143 Kan. 847, 57 P. 2d 17; 58 C. J. 940; Driebe et al., Appellants, v. Fort Penn R. Co. et al., 331 Pa. 314, 200 A. 62, 117 A. L. R. 1091; Pomeroy's Specific Performance of Contracts, 3d Ed., Secs. 158, 151; Fry on Specific Performance, 6th Ed., Par. 338; 1 Lawrence on Equity Jurisprudence, 188-189, Sec. 142. Whatever may have been the situation as to the agreement between the parties on January 8, 1946, as to certainty and mutuality, the contract was definite as to the type of automobile, the price to be paid therefor, and the date for delivery, at all times subsequent to the day the car was shown to the plaintiff by the defendant and plaintiff agreed to accept the same. It is well known, of course, and a matter of which the court does take judicial notice, that the prices of new automobiles in the hands of an authorized dealer of the manufacturer have been standardized by the manufacturer and can be readily computed by adding to the f. o. b. factory price of any model the freight, taxes and other items of a like nature, all of which are well known to both dealer and customer. City of Topeka v. Stevenson, 79 Kan. 394, 99 P. 589, 131 Am. St. Rep. 297, 17 Ann. Cas. 491; 31 C. J. S., Evidence, Sec. 81, page 674 et seq.

"When plaintiff was shown the car at defendant's place of business, plaintiff offered to accept the same and pay the cash price thereof and defendant's only ground for refusal to deliver the car was that the plaintiff would not furnish a 'trade-in'." The court held that this reason was insufficient to prevent specific performance.

In the case before us we find the same facts as were before the court in Kansas. In the Kansas case a deposit of $100.00 was made by the prospective purchaser and a receipt taken, which is as follows: ''Hewitt Chevrolet Company, 412-419 South Main Street, Phone 1780-1781, No. 3115, Ottawa, Kansas, January 8th, 1946. Received of B. F. Heidner One Hundred & no/100 Dollars ($100.00), deposit on new car. Non-transferrable. Hewitt Chevrolet Company, by Alex N. Telfer. Thank You.'' Plaintiff was given number 66 on defendant's list. There were no specifications as to kind, make, model, price or date of delivery, as in the case before us, yet the court held that when the car arrived and the purchaser was notified and that he then came to the place of business of the seller, viewed the car and accepted it, that that completed the oral agreement of sale. The contract was then made definite as to kind, model, price and date of delivery, and it was no defense that the purchaser refused to trade in his used car, that not being considered at the time the deposit was made and the agreement was first entered into.

· We hold that the trial court erred in holding that the receipt was the whole basis upon which plaintiff relied for recovery. It alone did not constitute the entire contract. The court left out of consideration what took place on the last of August or the first of September, 1946, the time when defendant called plaintiff and informed him that his automobile had arrived and the fact that plaintiff and his wife viewed the car and it was acceptable to them and they agreed to take it and pay the purchase price and then delivery was refused solely because plaintiff refused to turn in his old car for $835.00 as a part of the purchase price. We hold that equity will determine the enforceability of a contract as to certainty, completeness and mutuality as of the date of the demand for specific performance or at the time suit was filed. We hold that the contract for purchase of the automobile in this case was completed on or about September 1st, at the time plaintiff viewed the car and agreed to accept it and to pay the purchase price in cash. It was certain, complete and had mutuality and therefore specific performance could not be denied because of lack of completeness, certainty and mutuality as of the date defendant gave the receipt to plaintiff and the $100.00 was deposited on the purchase price, to wit, November 7th, 1945. Whatever might have been the situation at the time the receipt was given for the deposit aforesaid, the agreement between the parties on the first of September, 1946, the date the new car was tendered plaintiff, and he agreed to accept it, the contract was definite as to type and price and date of delivery. We further hold that the question of price was definite from the beginning because the price is determined by adding to the manufacturer's price, the freight and expenses necessary for delivery to the customer and the court will take judicial notice that that price is fixed as of date of delivery. There was a conflict of testimony as to

how the car was to be paid·for·but we believe that the facts in the case are clear, cogent and convincing that at the time the contract of sale was entered into between the parties that there was nothing mentioned about a trade-in and we hold that the purchase price was to be in cash.

The judgment is reversed with directions to enter a decree of specific performance in favor of plaintiff; that defendant deliver to the plaintiff a new Super Buick automobile, Model 56S, Sedanette, year 1946, at the delivery price of $1855.87, and in case defendant cannot deliver a 1946 model, then a new car of the above description, made either in 1947, 1948 or 1949, at the price of $1855.87.

*Blair, J.,* and *Vandeventer, P. J.,* concur.