## LIKENS v. SOURK.

### No. 21913.

Kansas City Court of Appeals. Missouri.

Dec. 7, 1953.

Gresham, Boughnan & Whipple, Walter J. Gresham, Kansas City, for appellant.

Robert S. Burns, Kansas City, for respondent.

SPERRY, Commissioner.

Plaintiff, George F. Likens, Jr., and defendant, R. M. Sourk, had been partners in Sun-rite, a home improvement business. Plaintiff sold his interest in the business to defendant and, by the terms of the contract of sale, it was provided that plaintiff might re-purchase under certain stated conditions. This is a suit in equity to enforce specific performance of the option to purchase. Judgment was for defendant and plaintiff appealed.

Since this is an equity case we will try it *de novo*, giving due deference however, to the findings of the chancellor. Lustenberger v. Hutchinson, 343 Mo. 51, 119 S.W.2d 921, 926; Boeving v. Vandover, 240 Mo.App. 117, 218 S.W.2d 175, 177.

The clause of the contract upon which this suit is founded is as follows: "R. M. Sourk does further grant unto George F. Likens, Jr., or his assignee, the exclusive right to repurchase all of the assets of said business, including its name, good will and customer files for the price and sum of One Thousand ($1,000.00) Dollars, which option shall be exercisable only in the event that R. M. Sourk shall determine to cease the operation of said business, to convey any portion of his interest therein or to change the general character of his business."

Defendant testified to the effect that plaintiff was operating a business known as Sun-rite; that he bought into plaintiff's business in February, 1950, when its assets and liabilities about balanced; that they engaged in the home improvement business, with a retail store, under the trade name of Sun-rite Company; that, in February, 1951, they had drawn out more in salary than had been earned by the company; that they agreed that the business wasn't profitable for both of them; that defendant, at that time, had invested some $4,000 in the business and had withdrawn about $1,000; that the company's assets, in February, 1951, consisted of accounts receivable of about $1,000 and stock and fixtures valued at about $1,000; that its liabilities were between $4,000 and $5,000; that he agreed to and did purchase plaintiff's interest for the sum of $600 and assumed the partnership liabilities; that a

Mr. Panknin, a former employee of Sun-rite, purchased "Best Home Products" from a Mr. Hellebuyck in December, 1951; that he and Panknin combined their business in one store and shared profits and losses; that he and Panknin now operate said business; that, after acquiring plaintiff's interest, defendant added between $2,000 and $3,000 of new capital; that, as of the date of the trial, the company had assets of between $6,000 and $7,000 and owed some $4,000; that plaintiff had offered to pay defendant $1,000 for the business before bringing this suit.

On cross-examination, defendant denied that plaintiff had offered him $2,000 or $3,000 for his interest, in February, 1951. He stated that Mr. Hellebuyck had offered him $2,000 for his interest, before defendant purchased plaintiff's interest; that plaintiff wanted defendant to keep the business name of Sun-rite; that plaintiff had the contract prepared and presented it to defendant for his signature.

Plaintiff testified to the effect that he was operating Sun-rite; that defendant became a partner in the business, putting in $1,500 and, afterward, more money; that, about a year later, they ascertained that they were withdrawing more money than the company was making; that plaintiff offered defendant $3,200 for his interest in the business, which offer defendant refused; that plaintiff, eventually, sold his interest to defendant for $600, with an option to re-purchase.

Mr. Hellebuyck, called on behalf of plaintiff, stated that he was present when plaintiff and defendant discussed plaintiff's purchase of defendant's interest in the business; that plaintiff offered to pay $2,000 or $2,500 for defendant's share of the business; that witness made no offer to purchase defendant's interest.

Testimony elicited from plaintiff, by the court, was to the effect that he had never asked defendant the value of the assets or the amount of liabilities; that he has never offered to assume the liabilities of the business; that he did not know that the assets of the business were, at the time of trial, $6,000; that he had, through his attorney, offered to re-purchase the business from defendant for the sum of $1,000; that he has never made any offer for the business on the basis of the actual value of the assets; that he does not claim that he is entitled to re-purchase the business for $1,000 if it now has assets of $6,000 or $7,000.

Plaintiff's theory, as presented here, is that he is entitled to have his contract (or option) to re-purchase for $1,000 specifically enforced by a court of equity, regardless of the present value of the assets and without his assumption of any of the indebtedness. Defendant contends that equity will not specifically enforce a harsh, inequitable contract such as, he says, is this contract.

It does not appear from the evidence how much value the assets of the business had, or what may have been its liabilities, when defendant bought into it in 1950, about a year before the contract here involved was made. There is evidence to the effect, however, that the business was about "even with the board," that, if anything, it was near bankruptcy. It appears from the testimony of defendant that he had, prior to execution of the contract here sued on, invested about $4,000, of which he had withdrawn about $1,000 and that, after this contract was executed, he invested an additional $2,000 or $3,000. Plaintiff stated that defendant invested $1,500 when he became a partner of plaintiff, and that he invested more money after that time, while the partnership existed; that defendant had more in the business, when the instant contract was made, than did plaintiff. It appears that, during the existence of the partnership, they each drew out equal amounts, a total of more than the business made.

It is clearly indicated by the record that the chancellor believed the assets of the business, at the time the trial was had, amounted to several thousand dollars, likewise the liabilities. In fact, plaintiff charges that the chancellor "considered an al-

leged increase in inventory at time of trial, asserted but not proved by defendant." The chancellor saw the witnesses on the stand and heard them testify. He himself asked them a number of searching questions. We will defer to his finding that the assets of the business had greatly increased, and that the liabilities were several thousand dollars.

Plaintiff specifically stated that he had never offered to assume the liabilities, and had never made any offer based on the increased value of the assets.

■ Ordinarily a court of equity will enforce a contract to sell personalty not readily obtainable on the market. Boeving v. Vandover, supra. In such cases, the general rule is that, if the contract as made is complete, fair, and untainted by fraud or other vice, specific performance goes as a matter of right. Rombauer v. Compton Heights Christian Church, 328 Mo. 1, 40 S.W.2d 545, 554. But the chancellor has discretion to perform or not to perform, in a case involving specific performance; but the discretion to be exercised is a sound, judicial discretion. It may be exercised against performance where the contract is "unfair, overreaching, biting". Beheret v. Myers, 240 Mo. 58, 77, 144 S.W. 824, 830. It must not be biting, unconscionable. Kirk v. Middlebrook, 201 Mo. 245, 288, 100 S.W. 450. It must appear that the contract is fair, reasonable, and just in its provisions. Niedt v. Ashoff, Mo.App., 193 S.W.2d 348, 352. The fairness or reasonableness of a contract must be determined largely from the special facts of the particular case and the surrounding circumstances; and among the circumstances considered and given great stress in determining the unreasonableness or unfairness of a contract are: one-sidedness in the obligations assumed; provisions placing defendant at the mercy of plaintiff. 58 C.J.

pages 954, 955, 81 C.J.S., Specific Performance, § 40. The criterion by which a contract is judged, as to ordering its specific performance, is not whether a court would be justified in its rescission, or in refusing other forms of relief, but whether it would be inequitable to enforce the contract. 49 Am.Jur. par. 7.

■ Measured by the above rules of law, we think the chancellor was justified in refusing to grant the relief sought. Plaintiff insisted that defendant transfer to him for $1,000, assets valued at $6,000, according to the undisputed testimony of defendant; and he did not offer, even in court, to assume and discharge obligations of the business to the extent of several thousand dollars. Plaintiff, in effect, verbally told the court that he wasn't asking for that kind of bargain. He recognized, in open court, the inequity of his demand. We think that specific performance of this contract would work an unreasonable hardship on defendant; that such a decree should not be granted by a court of equity.

Defendant also urges that the contract is unenforceable because it places unreasonable restraint upon the alienation of property. In view of our opinion, heretofore stated, it is not necessary to discuss this feature of the case. However, see Restatement of the Law, Contracts, par. 515, subsection d.

The judgment should be affirmed.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed.

All concur.