Gary **MINOR** and Gina Carter, Respondents,

v.

Robin Wayne **RUSH** and Delann Rush, Appellants.

No. WD 65439.

Missouri Court of Appeals, Western District.

March 6, 2007.

George Edwin Proctor Jr., Liberty, for Appellant.

Drew Foster Davis, Cameron, for Respondent.

RONALD R. HOLLIGER, Presiding Judge.

Robin and Delann Rush ("Sellers") appeal from a judgment ordering them to specifically perform a contract to sell their 230 acre farm to Gary Minor and Gina Carter ("Buyers"). Sellers refused to close and deliver a warranty deed to Buyers when Sellers determined that liens on the property exceeded their proceeds of the sale. Because they did not obtain a full Deed of Release from their bank, they claim that their refusal to deliver a deed to Buyers should be excused on the basis of

impossibility of performance. The judgment is affirmed.

### Factual and Procedural Background

Sellers operated a farm on 230 acres in Dekalb County. Experiencing financial difficulties, Sellers listed their land for sale with a realtor at a sale price of $1,325 per acre. The land was encumbered by seven liens. Six of those liens were held by Horizon State Bank (the "Bank") either jointly with or guaranteed by the Farmer's Home Administration ("FHA"). A seventh lien (the "McQuinn lien") was privately held.

Gary Minor and Gina Carter originally offered $1,000 per acre for Sellers' land. Under a twenty-four hour deadline to accept the offer, Sellers asked the Bank whether the sale would be sufficient to clear enough debt to enable the Bank to release the property. Bank informed Sellers that a sale at that price "looked like" it would clear the liens held by the Bank. Sellers accepted Buyers' offer and entered into a contract for the sale of the land. The contract between the parties stated that Sellers would provide title in fee simple, but did not provide for any contingencies if Sellers' proceeds were not sufficient to release the liens.[1]

In preparing the paperwork for the closing, the Bank requested a final payoff amount from FHA. FHA informed the Bank that there was an additional $25,000 in deferred payment outstanding. Although the Bank had annually contacted FHA to provide information of the outstanding loan balance to permit the Bank to determine the amount of operating loans for Sellers' following growing season, information about the outstanding deferred payment balance had not been included in the information provided by FHA. The Bank also became aware of the McQuinn lien at this time. Over $50,000 would be required to retire the debt secured by that lien.

Given the amount of money necessary to cover the deferred payments to FHA and obtain a release of the McQuinn lien, the Bank determined that the sale price would be insufficient to clear the debt and refused to release its liens on the property. Because the Bank was unwilling to provide a Deed of Release, Sellers were unable to tender title in fee simple at closing. Buyers brought suit for breach of contract seeking specific performance of the contract. Sellers defended that because the Bank would not release the liens, performance was impossible. The trial court held that Sellers had breached the contract of sale and ordered specific performance of the contract. This appeal follows.

### Standard of Review

■ Appellate review of court-tried cases is governed by the standard articulated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Under that standard, a trial court's judgment will be affirmed unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32.

### Discussion

■ In their sole point on appeal, Sellers claim that the trial court erred in ordering specific performance for the reason that the Bank's refusal to release its deed of trust rendered their performance

---

1. Of course, in order for Sellers to deliver a fee simple title they were required to convey the property free of liens.

under the contract impossible.[2] Sellers do not question the sufficiency or weight of the evidence. Their only claim is that the trial court erred in its declaration and application of the law. As a general rule, when a party contracts to do "a thing possible to be performed, he will not be excused . . . because unforeseen difficulties are encountered." *Webb–Boone Paving Co. v. State Highway Comm'n*, 351 Mo. 922, 173 S.W.2d 580, 584 (1943) (quoting *United States v. Spearin*, 248 U.S. 132, 136, 54 Ct.Cl. 187, 39 S.Ct. 59, 63 L.Ed. 166 (1918)). Thus, a party to a contract must perform thereunder "unless performance is rendered impossible by an Act of God, the law, or the other party." *Farmers' Elec. Coop., Inc. v. Mo. Dep't of Corr.*, 977 S.W.2d 266, 271 (Mo. banc 1998). In order for a contingency not resulting in impossibility to excuse performance, the party wishing to be excused must provide for that contingency in the contract. *Stein v. Bruce*, 366 S.W.2d 732, 734 (Mo.App. 1963).

Here, Sellers argue they cannot provide fee simple title because the Bank's refusal to provide a Deed of Release renders their performance impossible. In this regard, Sellers direct this court's attention to *Werner v. Ashcraft Bloomquist, Inc.*, 10 S.W.3d 575 (Mo.App. E.D.2000), in which it was noted that "if the fulfillment of the contract depends on the act or consent of a third party, the contract is unenforceable until the third party so acts or consents." *Id.* at 578.

Sellers' reliance on *Werner* is misplaced. In that case, a contractor entered into a remodeling contract with the owners of a shopping center. *Id.* at 576. The contractor then subcontracted the removal and reinstallation of signage in front of the shopping center. After the subcontractor had removed the signage, the owners of the shopping center decided to purchase new signage instead of reinstalling the old signage. *Id.* The contractor then paid the subcontractor for the work already done and discontinued the subcontract. *Id.* The subcontractor sued for breach of contract, and the contractor took an appeal from an adverse judgment, claiming that the owner's decision to replace the signage rendered their contractual duties impossible of performance. *Id.* at 576–77.

On appeal, the Eastern District of this court noted that the doctrines of commercial frustration and impossibility would, in appropriate cases, excuse performance of contractual duties. *Id.* at 578. Nonetheless:

> if a party to a contract unconditionally undertakes to perform an act that is not impossible, but merely requires a third party to acquiesce or perform a preceding act, the party's performance is not deemed to be conditioned on the third party's acquiescence or performance. In the latter situation, the inability to secure the necessary permission or acts of the third party does not excuse performance of the contract.

*Id.* (internal citations omitted). Of particular relevance to the case at bar, the *Werner* court held that a change order by a customer is reasonably foreseeable in remodeling contracts. *Id.* at 577. Such a change order is, therefore, not the "type of

---

2. Sellers also argue in passing that specific performance is an inappropriate remedy because legal damages would provide adequate compensation and specific performance of the contract would work an undue hardship against the Sellers. Similarly, Sellers suggest that the contract "terminated under its own

terms" when Sellers failed to tender clear title and Buyers failed to object thereto in writing. None of these arguments, however, are raised in Sellers' Point Relied On, and are therefore not preserved for our review. Rule 84.04(e); *see also Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978).

unexpected event warranting consideration of the application of the impossibility of performance doctrine." *Id.* Thus, before a party may be "excused from performance in the event of contingencies arising after the formation of a contract, it is that party's duty to provide therefor[ ] in the contract." *Id.*

In the instant case, Sellers did not condition the contract on the Bank releasing its liens on the property. The Bank's first informal opinion that the sale proceeds would be sufficient to clear the liens was based on the information it had on hand at the time that opinion was rendered. Although both the Bank and Sellers knew that the liens were either guaranteed by or held jointly with FHA, neither the Bank nor Sellers contacted FHA prior to acceptance of the offer.

The *Werner* court further noted that, as between the contractor and subcontractor, the contractor was in a better position to anticipate the contingency that actually occurred. *Id.* Similarly, in the present case, both the Bank and Sellers, but not Buyers, had access to information concerning both Sellers' financial condition and the relevant loans. Under these conditions, it cannot be said that the Bank's withholding of consent falls within the stringent limits of the impossibility defense under Missouri law.

By accepting Buyers' offer, Sellers ran the unstated—but not unprecedented—risk that there would be more debt outstanding than originally contemplated by the Bank's informal approval. As in *Werner*, Sellers assumed the risk associated with that contingency when they contracted with Buyers and cannot now claim that by withholding the Deed of Release, the Bank has rendered Sellers' performance under that contract impossible.

## Conclusion

Because the contingency that led to Sellers' refusal to perform was not the result of an act of God, the law, or the other party, and was not otherwise unforeseeable, Sellers have failed to establish impossibility of performance in this specific performance action. The judgment of the trial court is affirmed.

ROBERT G. ULRICH, Judge, concurs in majority.

HAROLD L. LOWENSTEIN, dissents in separate opinion.

HAROLD L. LOWENSTEIN, Judge, dissenting.

I respectfully dissent. There is no quibble with the conclusion that the Rushes, as Sellers, breached the sales contract when they failed to obtain a Deed of Release from their bank and provide fee simple title at closing. The Sellers, however, contend that the trial court's granting of specific performance as relief was too harsh. This point has merit.

Specific performance is appropriate where the remedy at law for a breach of contract is inadequate. *Becker v. Tower Nat'l Life Inv. Co.,* 406 S.W.2d 553, 559 (Mo.1966) (holding that where no evidence was offered to show that plaintiff remedy at law for damages was inadequate, court would not consider equitable relief in the form of specific performance, but would award damages instead). Sellers argue that in this case specific performance is an inappropriate remedy in that "there was no evidence or testimony that the specific piece of property sued on was unique or that there was some special reason [Buyers had to] have this particular piece of property." Missouri courts have held that every tract of land is recognized as having a unique value. *Kay v. Vatterott,* 657 S.W.2d 80, 82 (Mo.App.1983). Each parcel

of land is unique; a contract for sale of land is subject to the extraordinary remedy of specific performance. *Peet v. Randolph*, 33 S.W.3d 614, 617 (Mo.App.2000).

Specific performance is not a remedy of right, however. *Lemp Hunting & Fishing Club v. Hackmann*, 172 Mo.App. 549, 156 S.W. 791, 798 (1913) ("specific performance is not a matter of right ... but one somewhat of grace"). Specific performance is purely an equitable remedy governed by equitable principles. *Hoover v. Wright*, 202 S.W.2d 83, 86 (Mo.1947). "The remedy is invoked primarily that complete justice may be done between the parties." *Id.* In a suit for specific performance, if the remedy would cause inequity, damages may be adjudged. *Hamilton v. Hamilton*, 59 Mo. 232, 233 (1875).

A court at its discretion, within established principles of equity, may award or withhold the remedy. *Holtmeier v. Dayani*, 862 S.W.2d 391, 405 (Mo.App.1993). The facts of the case determine whether an award of specific performance is equitable between the parties. *Id.* "The criterion by which a contract is judged as to ordering its specific performance is not whether a court would be justified in its rescission, or in refusing other forms of relief, but whether it would be inequitable to enforce the contract." *Likens v. Sourk*, 263 S.W.2d 462, 465 (Mo.App.1953).

A court may choose to withhold specific performance when "its enforcement will cause unreasonable or disproportionate ... loss to the defendant." *Landau v. St. Louis Pub. Serv. Co.*, 364 Mo. 1134, 273 S.W.2d 255, 259 (1954). Even in the absence of mistake or fraud, the court may withhold specific performance if it determines that to grant the remedy would "inflict such a burden or hardship upon the defendant as to be inequitable or unconscionable." *Lemp*, 156 S.W. at 798.

In this case, the subject of the contract is the Rushes greatest asset, their land, which they put on the market to alleviate their financial difficulties. Respondent Buyers point to Sellers' balance sheet for January through December 2003 that lists Sellers' net worth at $145,558. Buyers argue that Sellers have sufficient assets to pay down the debt to enable the Bank to release the land. However, with regard to Sellers' statement of net worth, Sellers' assets include a $68,000 carry over loss from farm operations and that asset is not cash available to the Sellers. Moreover, the 2003 balance sheet submitted does not reflect the later discovered $25,000 deferred payment liability. Therefore, actual assets that were available to Sellers to pay down the debt is $52,558. If, *arguendo*, Sellers liquidated $46,000 in assets to make up the difference between Buyers' offer and the $1,200 per acre required by the Bank, Sellers would have lost their land and only have less than $7,000 in remaining assets.

Moreover, even if Sellers liquidate 87% of their assets to pay down the debt and close the sale, the Bank is unlikely to release the liens on the remaining land. Sellers would still have over $60,000 in liabilities with less then $7,000 in assets with which to secure the debt. Under such a scenario, both the Bank and the holder of the McQuinn lien may still require the land to secure the liens even after Sellers have virtually bankrupted themselves to meet the requirements of the sale contract.

Specific performance is invoked so that complete justice is done between the parties. A greater strength of case is required to grant, rather than to defeat, a claim for this equitable remedy. *Kopp v. Franks*, 792 S.W.2d 413, 419 (Mo.App. 1990). There is no doubt here that the Sellers made a contract. They did not

breach for any untoward reason or to gain any economic advantage. To the contrary, they acted in good faith and only breached when it became obvious their tangible assets were less and their liabilities were more than they should have known. They attempted to find a way to honor the contract without suffering an unreasonable economic hardship. *Id.* at 420. Illustrative is the testimony of Mr. Rush in cross-examination:

Q. Did you call anyone trying to sell any of your equipment?

A. What little—most of it we need; so it was either, I guess sell or quit, or—

This is not a case of a change of heart by the Sellers. Under the facts present in this case, specific performance would be the complete financial undoing of the appellants. I would affirm the judgment that there was a breach; and would reverse as to the remedy of specific performance, and remand the case to the trial court to determine damages for the Sellers' breach.