### Ellis *v.* Roberts et ux., Appellants.

50

Argued November 18, 1929.

Before Porter, P. J., Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*J. Allen Hodge*, and with him *Boyd Lee Spahr* and *J. B. Hannum, Jr.*, of *Hannum, Hunter, Hannum & Hodge*, for appellants.—The judgment note and agreement of sale were procured by fraud: Phillips v. Meily, 106 Pa. 536; Gandy v. Weckerly, 220 Pa. 285.

The note was intended as a payment on account and not as part of the deposit: Artzerounian v. Demetriades, 276 Pa. 303; Smythe v. Resnick, 82 Pa. Superior Ct. 208.

If the note was intended as part of a deposit to be forfeited in case of non performance, it was a penalty: Sheaffer v. Eichenberg, 62 Pa. Superior Ct. 510; March v. Allabough, 103 Pa. 335; Kunkel & Jordan v. Wherry, 189 Pa. 198; Keck v. Bieber, 148 Pa. 645;

Gross v. Machine Works, 277 Pa. 363; Clements v. Railroad Co., 132 Pa. 445.

*Edward H. P. Fronefield,* and with him *David S. Malis* and *Arthur L. Reeser* of *Lutz, Ervin Reeser & Fronefield,* for appellee.—The plaintiff did not procure the judgment note and agreement by fraud: Ralston v. Philadelphia R. T. Co., 267 Pa. 257; Ogden v. Phila. & West Chester Traction Co., 202 Pa. 480.

The note was intended as part of the deposit to be forfeited in case of non performance: Gottschall v. Kapp, 47 Pa. Superior Ct. 102.

The judgment note together with the cash payments do not constitute a penalty: Ambridge Borough v. Pittsburgh and Beaver Street Railway Co., 234 Pa. 157; Sautter v. Rowland, 285 Pa. 212; Lichetti v. Conway, 44 Pa. Superior Ct. 71.

Opinion by Gawthrop, J., January 29, 1930:

Plaintiff entered judgment against Carl H. Roberts and Bessie M., his wife, on a judgment note executed and delivered by them to him. On considering the testimony taken on a rule to open the judgment, the court below discharged the rule. From that order we have this appeal by defendants.

There is no conflict as to the main, material facts. Plaintiff is a real estate broker and Mr. Roberts, one of the defendants, is in the leaded glass business in Philadelphia. Defendants averred in their petition that on November 24, 1926, they entered into a written agreement with plaintiff by which he agreed to sell and convey to them, and they agreed to purchase from him, premises known as No. 4322 Lancaster Avenue, Philadelphia, for $16,800, "as follows: One hundred ($100) dollars in cash and a judgment note of two thousand ($2,000) dollars, with interest at the signing of this agreement, which judgment note may be recorded immediately against the premises which the said parties

of the second part own at No. 9 Wells Avenue, Glenolden, Delaware County, Pennsylvania. The premises are to be conveyed subject to an encumbrance of a seventy-five hundred ($7,500) dollar first mortgage, and the balance of the purchase price to be paid in cash at time of settlement, which is to take place within ninety (90) days from the date of this agreement ........ The amount of twenty-five ($25) dollars is to be paid each and every week, on Wednesday, commencing December 1, 1926, until the day of settlement, which weekly payments when made are to be credited on account of the purchase price. The deposit, together with any moneys hereinafter paid by the parties of the second part, will be forfeited to the party of the first part as liquidated damages, in case of a default by the said parties of the second part in performance of the terms of this agreement. It is understood and agreed between both the parties of the first part and second part that the judgment note in the amount of two thousand ($2,000) dollars, heretofore mentioned, will be paid in cash by the parties of the second part on the day of settlement ........ Possession is to be given by deed and key on the date of settlement, ...... time to be the essence of this agreement, unless extended by mutual consent in writing, endorsed thereon;'' that in accordance with the terms of this agreement they did at the time of the signing thereof pay to plaintiff $100 and execute and deliver to him a judgment note for the sum of $2,000, payable one day after date, with interest at six per cent; that the note was entered November 26, 1926, in the court below; and that in accordance with the terms of the agreement they made to plaintiff sixteen weekly payments of $25 each, aggregating $400. March 9, 1927, Mr. Roberts wrote plaintiff that he could not put through the settlement because he was financially embarrassed and that ''you will consider this as final.''

Whereupon, plaintiff wrote defendants on March 10, 1927, stating, inter alia: ''So that you will not be obliged to lose your twenty-four hundred and twenty-five ($2,425) dollars deposited, I am still willing, without waiving any rights, to give you another month to make settlement, on the payment of an additional one hundred ($100) dollars, which will apply to the purchase price, providing this one hundred ($100) dollars is paid on or before Monday, March 14, 1927, at twelve o'clock noon.'' In response to this letter defendants did nothing. On December 2, 1927, they presented their petition to open the judgment, admitting that they had defaulted in making settlement under the agreement, and averring that plaintiff had declared a forfeiture of the deposit of $100, the weekly payments of $400, made by them, and of the judgment note of $2,000, and threatened to issue execution on the note; that the note by the agreement was not payable until the date of settlement; that the cash payments and the note constituted an exorbitant penalty and are not liquidated damages; that the note was not intended to be a portion of any deposit or sum of money to be forfeited by them as liquidated damages in case of default by them in the performance of the terms of the agreement, but was only intended to be a part of the purchase price to be paid by defendants at the time of settlement in the event that the sale was consumated; that there was no consideration for the note; and that the written agreement was an overreaching on the part of the plaintiff.

The answer of plaintiff to this petition averred that he retained the money received by him on account of the purchase price of the property; that he was ready at all times to make settlement which defendants refused; that he had prepared and executed a deed for the premises at the time fixed for performance of the written agreement and demanded the payment of the

balance of the purchase money; that defendants refused to accept the deed and make settlement; admitted that plaintiff had issued execution on the judgment; and averred that he was entitled so to do under the terms of the agreement.

Defendants filed a replication, again admitting that they failed to make settlement under the agreement, but denying that plaintiff tendered them a deed for the premises at the time fixed in the agreement of sale. They averred also that the agreement was procured from them by plaintiff by fraud; that he agreed to finance the purchase; that at the time of the execution of the judgment note, it was represented to be an application for a loan from a building association, to be applied on the purchase price of the premises described in the agreement of sale when settlement was made; that they did not know that they were signing a judgment note; that later when plaintiff presented to them the agreement of sale for execution and Mr. Roberts read the same and saw that it required defendants to execute a judgment note for $2,000, they refused to execute the agreement of sale; that thereupon plaintiff advised them that the paper writing which they had theretofore signed and which plaintiff had represented to them to be an application for a building and loan mortgage was in fact a judgment note, but that they would not be called on to pay it; that the note was to be used only to show the building association that plaintiff had some security toward the purchase of the premises and to assist in procuring the loan; and that if the association made the loan the proceeds thereof would be applied at the time of settlement on account of the purchase price of the property mentioned in the agreement of sale, provided settlement was actually made for the property; that it was only after this explanation that defendants executed the agreement of sale; that plaintiff failed and refused

to finance the purchase of the property under the agreement, and for that reason defendants refused to make settlement.

The allegations of fraud in the replication were specifically denied in plaintiff's supplemental answer.

The court below gave three reasons for refusing to open the judgment: (1) Because the evidence was insufficient to justify the submission to a jury the question whether the judgment note was procured from defendants by fraud; (2) Because the note was a part of the deposit made by defendants, which by the terms of the agreement was forfeited as liquidated damages in case of default by defendants; and (3) Because the part of the purchase price so forfeited by defendant was liquidated damages and not a penalty.

After reading and re-reading the record and briefs we can reach no other conclusion than that the effort of defendants to prove that they have a just defense to the note on the ground that it was procured by fraud, or that it is being used in violation of a contemporaneous parol agreement inducing them to execute it, wholly failed. Discussion of the evidence on this question would serve no useful purpose. It is undisputed that fraud was not alleged in the petition to open; that when the husband wrote to plaintiff stating that it was impossible for him to take the property, he did not suggest that he had been made the victim of any fraud, or that his financial embarrassment was the result of anything that plaintiff had done or had failed to do; that when plaintiff wrote him on March 9th giving him one month to settle and save his $2,400 (which amount included the note) he did not reply; and that when he signed the agreement of sale he knew he had signed the judgment note referred to therein. The idea of fraud seems to have been an afterthought. Defendants' testimony is contradictory and unsatistory. It is inconsistent with the averments of the peti-

tion filed and with their prior actions. Plaintiff and his principal, the owner of the property which was the subject of the agreement of sale, testified positively that before the agreement was signed plaintiff explained to Mr. Roberts that he would require a deposit of $100 in cash and a judgment note for $2,000. In the circumstances it seems very clear that defendants failed to show that they have a defense to the note on the ground of fraud in its procurement, or in the use plaintiff is attempting to make of it.

It is urged in behalf of appellants that under the proper construction of the agreement of sale the judgment note was not a part of the deposit made by them at the time of the execution of the agreement, and therefore does not constitute a part of the liquidated damages to be forfeited by them in case of their default; that the only deposit contemplated by the agreement was the sum of $100 paid in cash at the time of the execution thereof; that a deposit is something which is presently paid; that the agreement treats the note as something entirely distinct and apart from the deposit, for it provides that the note shall be paid in cash on the date of settlement; and that as settlement was not made the note never became due. Upon full consideration we have been unable to follow this reasoning and adopt this conclusion. We think that the language of the agreement providing for the payment of the purchase price and the liquidation of damages in case of a default by the purchasers is not ambiguous. Reference to that part of the agreement discloses that defendants agreed to pay for the property $100 in cash and a judgment note of $2,000, with interest, at the signing of the agreement, "which judgment note may be recorded immediately." The next provision as to payment is that the balance of the purchase price was to be paid in cash at the time of settlement, within ninety days from the date of the agree-

ment; and that defendants should pay $25 each week on account of the purchase price, until the date of settlement. Then follows this: ''The deposit, together with any moneys hereinafter paid by the parties of the second part will be forfeited to the party of the first part as liquidated damages, in case of a default by the said parties of the second part in the performance of the terms of this agreement.'' Does the word ''deposit'' refer only to the cash payment of $100. or to that payment and the $2,000 note? One of the definitions of the word ''deposit'' as defined by Webster is: ''Anything given as a pledge or security, as earnest money or a forfeit.'' Manifestly it was used here in that sense and refers to that part of the purchase price which was paid and secured to plaintiff at the time of the execution of the agreement. The facts that the note bore interest from its date and could be entered immediately show that the intention of the parties was to give plaintiff, as nearly as possible, the equivalent of the money which the note represented. The note became an existing obligation when it was executed and delivered at the signing of the agreement. If the parties did not intend it to be a part of the deposit and defendants can escape liability under it by their own default, there is no reason why it should have been given. There would seem to be no sound reason why a note or other security may not be given as a deposit or hand money. If this agreement had not provided for, and defendants had not made, any cash payment at the time of its execution, and the note alone had been given, could there be any doubt that the word ''deposit'' as used in the agreement would refer to the note? Our conclusion is that the purpose of the parties as disclosed by the agreement was to make the note a part of the hand money; that the word ''deposit'' in the clause providing for the liquidation of damages refers to it as well as the cash payment of

$100; and that the clause in the agreement providing that the note would be paid in cash on the date of settlement merely fixed the time when the liability on the note must be liquidated.

Lastly, defendants contend that if the contract made the note a part of the deposit which, together with any moneys afterwards paid, was to be forfeited to plaintiff in case of a default by defendants, the effect of the provision in the contract for liquidating damages would be to cause them to forfeit $2,500 under a contract to purchase for $16,800, and that this amount is excessive and unreasonable as damages, and amounts to a penalty. In passing upon a similar question in Moore v. Colt, 127 Pa. 289, 295, Chief Justice Paxson said: "There is no class of cases which come before us more difficult to determine upon any settled rule than this." When a similar question was before that court in Streeper v. Williams, 48 Pa. 450, Mr. Justice Agnew, speaking for the court, said: "Upon the whole the only general observation we can make is that in each case we must look to the language of the contract, the intention of the parties as gathered from all its provisions, the subject of the contract and its surroundings, the ease or difficulty of measuring the breach in damages, and the sum stipulated, and from the whole gather the view which good conscience and equity ought to take of the case." The name by which the sum is called is of but slight weight, the controlling elements being the intent of the parties and the special circumstances of the case: Keck v. Bieber, 148 Pa. 645. The fact that the parties designated the amount agreed to be forfeited as liquidated damages is of little moment: Sautter v. Rowland, 285 Pa. 212. "The difficulty of measuring the damages which would result from a breach of contract is always an important element, if not a controlling one, in determining whether the intention of the parties was to fix a sum

certain as the just amount to be recovered, instead of leaving the question to the uncertain estimate of a jury": Emery v. Boyle, 200 Pa. 249. The relation which the sum stipulated bears to the extent of the injury which may be caused by the breaches provided against is likewise an important element: March v. Allabough, 103 Pa. 335. "Compensation, not forfeiture, is the equitable rule; but effect will be given to the intent of the parties unless it conflicts with some rule of equity. It cannot be said to do this merely because the amount on which the parties have agreed exceeds that which the court may consider an adequate compensation for the injury": Emery v. Boyle, supra. Damages arising from a breach of a contract for the purchase or sale of real estate are usually so uncertain and difficult of ascertainment that the tendency of the courts generally has been to sustain covenants of the parties liquidating the damages in such cases, unless they are unconscionable or grossly disproportionate to the injury provided against. This court said in Lichetti v. Conway, 44 Pa. Superior Ct. 71, 76, that "in the absence of such a covenant the measure of damages for the breach upon the failure of a purchaser to comply with his covenant to pay for land, is ordinarily the difference between the contract price and the value of the land, and that of all facts difficult to establish the value of land is one of the most difficult, and for that reason covenants liquidating the damages in such cases, when not unconscionable, will be enforced by the courts." In that case the sum named as liquidated damages was $500 and the real value of the property sold was $33,000. But Judge Porter, speaking for the court adopted the following from Sleeper v. Williams, supra: "Were the sum adequate in magnitude to compel specific performance, we might conclude that it was intended as a penalty only, against which equity would relieve on a full compliance with the contract. But its manifest inadequacy

as compared with the full price of the property leaves no other reasonable conclusion than that it was intended as a compensation to either party when the other wholly abandoned the contract.''

In the present case the sum which plaintiff claims amounts to $2,500, or fifteen per cent of the purchase price. He testified that Mr. Roberts told him that he only had a very nominal sum of money, about $100, to pay down on the property; that he told Mr. Roberts that it would be impossible to give him an option of ninety days for a consideration of $100, and asked him what else he had to offer; that Mr. Roberts said that he and Mrs. Roberts owned their home at Glenolden; that he (plaintiff) suggested that as a deposit defendants could put down $100 in cash and a judgment note of $2,000, and they agreed to that; and that at that time he learned from Mr. Roberts that there was a $2,700 first mortgage on the premises and a building and loan mortgage of $1,250, which was considerably reduced. Plaintiff regarded the property as worth between $5,000 and $5,500. In the light of the amount of the purchase price, the knowledge which plaintiff had of defendants' financial condition, the relation which the sum agreed upon as liquidated damages bears to the purchase price and all the other circumstances, we are led to the conclusion that plaintiff intended the provision in the contract for liquidated damages to compel specific performance by defendants. This made it a provision for a penalty and precludes plaintiff from recovering more than just compensation for the breach of the contract by defendants, and requires us to open the judgment.

The order of the court below is reversed, and the judgment is opened and the record is remitted with directions to frame an issue for the purpose of determining the amount of the actual damages which plaintiff sustained as a result of defendants' breach of the agreement of sale.