Trust Co. of Glen Rock v. Shrewsbury Furniture & Mfg. Co., Appellant.

Argued October 5, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*McClean Stock,* and with him *George Hay Kain,* for appellant.

*Camden H. McVey,* for appellee.

OPINION BY LINN, J., January 28, 1932:

The questions are, was there a breach of contract, and, if so, what damages are payable? May 23, 1929, receivers were appointed for the Shrewsbury Furniture and Manufacturing Company; August 5, 1929, the decree was amended by a declaration that the company was, and on May 23, 1929, had been insolvent. Its real estate and personal property were sold by the receivers. In the distribution of the proceeds, a dividend on the claim of $16,500 presented by I. Tanenbaum Son & Company, a corporation (herein called Tanenbaum), was allowed against the protest of other creditors. The claim was based on a contract made with the Shrewsbury Company, February 27, 1924, in which Tanenbaum is designated as "broker," and the Shrewsbury Company as "assured." The parties agreed that during the period from February 27, 1924, to December 31, 1939, the assured, through "the broker as its agent" would obtain fire insurance on the assured's property, not less than $60,000 on certain specified property, and $40,000 on other specified property; the assured agreed to pay the broker at a rate which amounted to $1,940 per year for the $100,000 of insurance. It is unnecessary to state in detail all the terms of the rather long contract. It provided that "additional insurance" ("floating, casualty, burglary, liability" insurance are stated as examples), should also be ordered through the broker; the record contains no evidence that such "additional insurance" was written, though one of the briefs states there was. By paragraph 4 the assured authorized the broker to equip the assured's buildings "with automatic sprinklers, automatic fire alarm and other improvements and protections against fire ......," the assured supplying certain property to be used in connection therewith. The parties agreed that the rate payable by the assured to the broker was conditioned upon the broker's right to install the sprinkler.

Paragraph 15 raises the question for decision, and is as follows: "It is further specifically understood and agreed that if the said assured shall at any time during the term of this agreement, by word or act, wrongfully repudiate or rescind this agreement, or sell or dispose of said business, or discontinue business, or for any reason cease to occupy the premises hereinbefore described, or file or have filed against it a petition in bankruptcy, resulting in an adjudication of bankruptcy either voluntary or involuntary, or if the assured (being a corporation) shall commence or carry on proceedings for a voluntary dissolution, or shall cease to exercise its corporate functions, or if proceedings are taken against it by any state or by the United States for a dissolution and revocation of its charter, said assured shall thereupon immediately become liable to and pay to said broker, and the said broker shall thereupon be entitled to recover from said assured the sum of fifteen hundred ($1,500) dollars for each and every unexpired year or fraction of a year of said term, which sum, with interest thereon to the date of payment, is hereby agreed upon as liquidated damages for the failure of said assured to carry out said contract upon its part. It is especially understood, however, that the broker may contract in advance with insurance companies or underwriters to provide insurance to the assured during the whole or part of the term hereof; that the broker, by reason of experience skill and exceptional facilities, can probably secure or has secured such insurance at specially reduced cost; and it is agreed that if for any partial or other breach of this contract by the assured, it becomes necessary to ascertain the actual damages suffered by the broker, instead of resorting to said liquidated and stipulated damages, the said facts shall be given full effect."

In paragraph 16 it was agreed that the cash value

of the sprinkler system installed by the broker "is and will be at all time during the term of this contract the sum of $15,000."

When the assured admitted its insolvency and its assets were transferred to receivers for winding up, there was such breach of the contract as the parties contemplated. There then remained 10 years 7 months and some days of the term unperformed.

Tanenbaum filed its claim under paragraph 15. The court allowed the claim and made an award at the rate awarded to other creditors,—36.7% of the fund for distribution. Exceptions were filed by creditors and were overruled. One of them has appealed.

The dispute between appellant and Tanenbaum is about the measure of damages. Both sides performed from February 27, 1924, to June 5, 1929. The record states that when the building was sold by the receivers, Tanenbaum removed and retained the sprinkler system, though, we note, in passing, that its brief states that the market value of the sprinkler system then was less than the cost of removal.

Appellant contends that the provision for the payment of $1,500 a year is penal and not in liquidation of damages on the ground of gross disproportion to the actual damages sustainable. In examining the back ground of the negotiation, we notice that the record states that at the usual rates, the cost to the assured of the $100,000 insurance would have been $2,200 per year; the broker, however, agreed to procure that insurance for $1,940; the learned court below has found that the cost of that insurance to the broker was $495, the broker being enabled to furnish it at that rate by installing the $15,000 sprinkler system.

The general rule of compensation for breach of contract requires that the innocent party be put in as good position, so far as it can be done by money, as he would have occupied, had the defaulting party per-

formed his contract; he should receive the amount of his money loss caused by the breach.

If the broker received $1,940 a year for the insurance which cost him $495, he gained $1,445 per year, which, if the other party defaulted, represented damage; and if the breach also deprived him of the commissions on "additional insurance," the damage would be increased. Accordingly, as the learned president judge below held, there was no unconscionable disproportion between the $1,500 liquidating damage provision agreed upon by the parties, and the damage apparently sustainable.

But appellant takes a radically different view, based on considerations concerning the $15,000 investment which the broker made in the sprinkler. Its position is thus stated in the brief. "This cost to Tanenbaum includes three definitely fixed and easily determined elements. They are; first, an annual depreciation of the equipment of the sprinkler system which amounts to $450; second, the cost of insurance contracts placed with insurance companies amounting to $582; and third, the interest on an invested capital of $15,000, amounting to $900.

"These items of expense totalled $1,932 and that left Tanenbaum a net annual profit of $8. To this should be added Tanenbaum's fees as a broker in placing this fire insurance which amounted annually to $58.20 making a total annual profit to Tanenbaum under the contract of $66.20."

The depreciation item is based on the evidence of a witness called by appellant; the cost of insurance $582 cannot be accepted, because the court has found that it was $495. The difficulty with the position grows out of treating a capital expenditure as a specific operating expense incident to performing this contract; the parties agreed that the broker could install the sprinkler costing $15,000, but they also agreed it

should be kept at that value during the life of the contract and should remain the broker's property with the right in him to remove it. By their contract the parties treated it as much a capital expenditure as the investment in the office furniture with which, or the house in which, the broker conducted its business; while, for purposes of profit and loss on its general business the broker may have charged both depreciation and interest against this and similar items, the contract, which we must take as they made it, shows that the parties intended that at the end of the term the broker was to get back the $15,000 in the form of the sprinkler system, though it may be, as appellee's brief says, that the amount was also lost because the sprinkler had no value when removed; see generally on this subject Jessup and Moore Paper Company v. Bryant Paper Company, 297 Pa. 483.

We agree that the contract of the parties liquidating damages should be enforced: Gross v. Exeter Machine Works, 277 Pa. 363; Ellis v. Roberts, 98 Pa. Superior Ct. 49, Sautter v. Rawland, 285 Pa. 212; Williston, Contracts, Vol. 2, s. 783 and 784.

Appellant suggests that only the present worth of the amount fixed as liquidated damages can be allowed as the basis for a dividend out of the proceeds for distribution, and to support that view, cites the rule given to the jury in suits for damage resulting from negligence, and also refers to general language in contract cases to the effect that an innocent party may recover "the value of the contract at the time of its breach," (Macan v. Scandinavia Belting Company, 264 Pa. 384, 392), but that contention does not arise on this record; here the parties have agreed that the specific amount, $1,500, "for each and every unexpired year or fraction of a year of said term" shall be paid, not the present value of such sum; see I.

Tanenbaum Son & Company v. Oxford Dye Works Inc., (N. J.) 153 Atl. 501.

The order is affirmed, costs of this appeal to be paid out of the fund.