## Terminal Realty Corporation v. Doubler

*Albert H. Ladner, Jr., 2nd,* and *H. Newell Williams,* for plaintiff.

*Robert C. Kitchen,* for defendant.

HAGAN, J., December 22, 1953.—There is before the court defendant's motion for judgment on the pleadings. The pertinent facts which emerge from the complaint, answer containing new matter and reply are as follows:

On December 28, 1949, plaintiff entered into an agreement of sale with defendant to purchase from defendant a certain tract of land. The purchase price was $23,400, and plaintiff paid $5,000 on account at

the time the agreement of sale was entered into. Settlement was to take place on February 28, 1950.

Prior to February 28, 1950, defendant offered to return plaintiff's deposit and to give plaintiff a reasonable profit if plaintiff would agree to cancel the agreement of sale. Plaintiff refused this offer. The settlement date was first extended to March 23, 1950, prior to which date plaintiff had submitted to defendant a deed for execution.

On March 23, 1950, settlement papers were prepared and signed by defendant and plaintiff's attorney. Settlement, however, was not consummated and payment of the balance of the purchase price, which was determined to be $18,323.92, was deferred to March 30, 1950. On March 30th plaintiff requested defendant to extend settlement until April 30, 1950, in return for which plaintiff offered to pay defendant the balance of the purchase price in excess of $17,000, to wit, $1,323.92. Defendant accepted this offer, and the additional amount was paid on account.

On April 30, 1950, plaintiff refused to accept the title offered by defendant, claiming that defendant was unable to convey title "free and clear of all liens and incumbrances, excepting existing restrictions and easements", as required by the agreement of sale, in that there existed a stream of water flowing through and upon the property, subject to the rights of owners of ground bounding thereon and entitled to the use thereof, i.e., riparian rights. Defendant denied that the existence of riparian rights in other owners of property abutting the stream constituted a breach of the covenant against encumbrances, and notified plaintiff that he was retaining the sums paid on account, $6,323.92, as damages, and that the agreement of sale was null and void.

Plaintiff sued for this sum on two counts, alleging that: (1) Defendant had committed a breach of the

covenant against encumbrances as heretofore mentioned, and (2), in the alternative, that the amount retained by defendant constituted a penal sum and not damages.

Defendant filed a motion for judgment on the pleadings on the following counts:

1. (a) The existence of riparian rights in owners of other property abutting the stream did not constitute an encumbrance against the land in question; (b) if it did, the encumbrance is an easement and, therefore, within the provision of the agreement of sale "excepting existing restrictions and easements", and (c) plaintiff is estopped by his conduct from alleging a breach of covenant against encumbrances.

2. The sums paid on account of the purchase price which were retained by defendant were not a penalty but rather were liquidated damages within the provision of the agreement of sale, which provided as follows:

"Should the buyer fail to make settlement as herein provided, and the said time is hereby agreed to be the essence of this agreement, sum or sums paid on account are to be retained by the seller, either on account of the purchase money, or as compensation for the damages and expenses he has been put to in this behalf, as the seller shall elect, and in the latter case this contract shall become null and void and all copies to be returned to seller for cancellation."

We shall first consider plaintiff's first count and the defenses thereto. The basic questions which are here raised are: (1) Whether the existence of riparian rights in owners of property abutting a stream constitutes an encumbrance against the title of other owners of land abutting upon the same stream, and (2) if so, whether this encumbrance is an easement or restriction.

"An encumbrance has been defined as 'every right or interest in the land which may subsist in third persons to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance': Lafferty v. Milligan, 165 Pa. 534, 537. It may be such as affects the title, or only the physical condition of the property: Memmert v. McKeen, 112 Pa. 315": Ritter v. Hill et al., 282 Pa. 115, 118.

Examples of the first class are mortgages and other liens of record. Examples of the second class are easements and restrictions. It is plaintiff's contention that riparian rights constitute an encumbrance, but not an easement. We think it clear beyond doubt, from the above definition of an encumbrance, that if riparian rights are an encumbrance, they must come within the second class of encumbrances as affecting the physical condition of the property, being in the nature of an easement or restriction. Thus, in Philadelphia v. Commonwealth, 284 Pa. 225, the Supreme Court said, at page 229:

"Long before the effective legislation providing the ways and means to commence and finish the structure [the Delaware River Bridge], there existed along the banks of the Delaware *valuable easements termed riparian rights*." (Italics supplied.)

This opinion, therefore, could be rested upon the ground that even if riparian rights do constitute an encumbrance, they are in the nature of an easement and, accordingly, are expressly excepted from the covenant in the agreement of sale. We believe, however, that this case should be decided upon the more fundamental question here involved, namely, the true nature of riparian rights, and whether they constitute an encumbrance. There are many Pennsylvania cases which expressly determine the *rights* of riparian owners. Research of neither counsel, nor our own,

however, has disclosed a Pennsylvania case where the precise *nature* of these rights has been decided, and we believe the point is worthy of discussion.

Clearly, riparian rights resemble in some respects an easement, in that both impose some limitation upon the use of another's land. Riparian rights, however, along with the rights to lateral and subjacent support, belong to a category generally known as "natural rights." These are rights which inure to the owner of land simply by reason of his ownership of the land, and are independent of grant or prescription. Thus, Tiffany, in his Treatise on Real Property, devotes an entire chapter, Chapter 13, (3d edition, 1939) to "Natural Rights." In this chapter he includes, among others, riparian rights and rights to lateral and subjacent support; and, in discussing these rights, he says:

"Indeed they are sometimes referred to as easements, but with doubtful propriety, and we adopt the expression 'natural rights' to describe these different phases of a general right in the land owner freely to enjoy the use of his land in its natural condition, without interference by his neighbors."

See also the discussion in Duenow et al. v. Lindeman et al., 223 Minn. 505, 27 N. W. 2d 421.

If we were to hold that the existence of "natural rights" which inhere in landowners constitutes an encumbrance against other land, then, quite clearly, *no* landowner could ever convey a title free and clear of encumbrances. As an example, it could always be contended that the existence of the rights of lateral and subjacent support in adjoining landowners constitutes an encumbrance against the land to be conveyed. Such a result would, of course, be absurd and is not the law.

Practically the precise facts of the instant case came before the New York Court of Appeals in the case of Kleinberg et al. v. Ratett, 252 N. Y. 236 (1929). That case differed from the instant one only in that:

(1) The covenant warranted the title to be free from *all* encumbrances, with no exception of easements and restrictions, and (2) the stream which ran through the lot conveyed was encompassed in a 24-inch pipe laid four feet underground during that portion of its course which ran through the conveyed property. It will be readily seen that plaintiff in the Kleinberg case was in an even stronger position than plaintiff in the instant case. The opinion in the Kleinberg case sets forth the law so succinctly and with such convincing logic that we quote therefrom at length (pages 238-240):

"Superficial or subterranean watercourses, not the subjects of grant or prescription, are not legal incumbrances, since nature itself, rather than man's contrivance, is responsible for their origin. True, the owner of land over or through which a natural stream flows may not divert or dam it back, to the injury of the upper or lower proprietor. The former possesses the natural right to have the stream discharge itself through its ancient channel, while it is the latter's right to have the stream come down to him in undiminished flow according to its established wont. In a sense these rights restrict and burden the use of the intermediate land. Nevertheless, since they are not man-made but natural rights, they constitute neither easements nor encroachments. (Washburn on Easements & Servitudes [4th ed.], p. 24; Angell on Watercourses, sec. 90; *Stokoe v. Singers*, 8 El. & Bl. 31; *Johnson v. Jordan*, 2 Metc. 234; *Scriver v. Smith*, 100 N. Y. 471; *Matter of Van Etten v. City of New York*, 226 N. Y. 483.) In *Stokoe v. Singers*, Earle, J., said: 'The right to the natural flow of water is not an easement, but a natural right.' In *Johnson v. Jordan*, Chief Justice Shaw said of the right of an upper owner to have a stream come to and pass from his land without obstruction: 'It is inseparably annexed to the soil, and

passes with it, not as an easement, nor as an appurtenance, but as parcel.' In *Matter of Van Etten v. City of New York*, Collin, J., said: 'The right of the owner of riparian land to the natural flow of water in a stream along the land is a corporeal hereditament and is an incident to and is annexed to the land as part and parcel of it. It is not, and is more than an easement.' In *Scriver v. Smith*, Earl, J., said 'such rights have some semblance to easements, and no harm or inconvenience can probably come from classifying them as such for some purposes. But they are not in fact real easements.' Again, he said: 'Would any of the usual covenants in a deed be violated because a natural stream of water flowed through the land and the upper owners, therefore, had an easement in such land? Clearly not.'

"In our case the only rights exercisable over the land in question by the upper or lower proprietors are rights to have the stream proceed across the land in its natural course with undiminished flow. There obtains no right, in either proprietor, to have the stream flow through the artificial conduit which has been provided. The owner of the land may with impunity remove the pipe and restore the stream to its ancient channel. Such being the case, the land is subject to natural rights but not to an easement, and the title is free from incumbrance. Consequently, in tendering title to the plaintiff, the defendant offered full performance of his contract obligations, and no right of action for moneys had and received, as upon a failure of consideration, accrued to the plaintiffs whereby the moneys might be recovered."

With this reasoning we concur, and therefore hold that the existence of riparian rights in owners of other land abutting on the stream which passes through the property being conveyed does not constitute an encumbrance against that property.

In view of our holding as above, it is unnecessary to discuss the estoppel issue raised by defendant.

Plaintiff's second count brings up for adjudication the question of whether a defaulting vendee can maintain an action to recover against a nondefaulting vendor the sum paid on account of the purchase price, on the theory that the sum retained by the vendor constitutes a penalty and not liquidated damages.

There is probably no field of the law in which greater doubt exists than in that of the right of a defaulting vendee to recover money paid on account of the purchase price of real estate. There is a long line of cases which categorically holds that a defaulting vendee may not recover from the vendor money paid on account of the purchase price: Sanders v. Brock, 230 Pa. 609; Atlantic City Tire & Rubber Corp., to use, v. Southwark Foundry and Machine Co., 289 Pa. 569, 574-75; Dluge et al. v. Whiteson, 292 Pa. 334; Durso v. Fiorini, 98 Pa. Superior Ct. 111, 116; Yentis v. Mills, 299 Pa. 25, 29; Roberts v. Roesch, 306 Pa. 435; Messinger v. Lee, 163 Pa. Superior Ct. 297; Tudesco et ux. v. Wilson, 163 Pa. Superior Ct. 352, 355; Brunetto v. Ferrara, 167 Pa. Superior Ct. 568, 571.

Thus, it was stated in Sanders v. Brock, supra, at page 614:

"No rule in respect to the contract (for the sale of real estate) is better settled . . . than this: that the party who has advanced money, or done an act in part performance of the agreement, and then stopped short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done."

If we were to follow the rationale of this line of cases, we would be required to hold that plaintiff is

precluded from recovering from defendant the sum paid on account of the purchase price.

However, there are many decisions of our appellate courts in which consideration is given to the question of whether sums paid on account by a defaulting vendee can be retained by a nondefaulting vendor as liquidated damages, or whether these sums are penalties which may be recovered by vendee from vendor. See Streeper v. Williams, 48 Pa. 450; Lichetti v. Conway, 44 Pa. Superior Ct. 71; Ellis v. Roberts et ux., 98 Pa. Superior Ct. 49; Vrooman v. Milgram, 124 Pa. Superior Ct. 145; Kraft v. Michael, et ux., 166 Pa. Superior Ct. 57. In at least one case, Ellis v. Roberts, supra, the court held that the deposit was a penalty and not liquidated damages. All of these last cited cases, with one exception, involved a situation where the vendor and not the vendee was plaintiff.

It would seem, therefore, at first glance, that perhaps the former rule that a defaulting vendee cannot recover back his deposit money applies only in the situation where the vendee is plaintiff, and that the question of whether the deposit money constitutes liquidated damages or a penalty only arises where the vendor is plaintiff. On closer examination this hypothesis does not hold up, however. In Lichetti v. Conway, supra, the vendee was plaintiff suing for the return of his deposit money; and, although recovery was denied him, the court discussed the question of whether the deposit money constituted liquidated damages or a penalty, and found it to be liquidated damages. Also, in Tudesco v. Wilson, supra, an action in which the vendee had deposited $1,600 in checks, upon which she later stopped payment, and where the vendor was plaintiff, the court permitted the vendor to recover, citing the first line of cases heretofore cited, which holds that a defaulting vendee may not recover his deposit, and saying, on page 356:

"In these circumstances the method of collection of liquidated damages is the only distinction between the right of vendors to retain their down money upon default by the vendee and the vendors' right to recover the liquidated damages, as provided for in the agreement, for the breach of contract."

Also, in Kraft v. Michael, supra, an action in which the vendor was plaintiff, the court first cited the line of cases holding that a defaulting vendee cannot recover his deposit, but then went on to decide the case on the basis that the deposit constituted liquidated damages and not a penalty.

It is obviously difficult to reconcile the foregoing cases, but we think that the true principle which emerges from them is this: Where a vendee chooses to *affirm* the contract of sale and attempts to show that it was the vendor who breached the contract, but fails to do so, and it therefore appears that it was the vendee who breached the contract, the vendor is entitled to retain the amount of the deposit money, if already in his possession, or to recover it from the vendee. The vendee may, on the other hand, *disaffirm* the contract and contend that, even though he breached the contract, nevertheless, as a matter of equity and good conscience, the amount stipulated in the contract as liquidated damages is actually a penal sum.

Under the old procedural rules, a plaintiff could not sue in the alternative, and therefore, he had to make a choice when he brought his suit whether to affirm or disaffirm the contract. This would account for the two seemingly contrary lines of cases heretofore discussed. Under the new procedural rules, however, a plaintiff may, as plaintiff in the instant case did, sue in the alternative, averring that (a) he did not breach the contract but that, rather, the vendor did, and (b) even if he, the vendee, had breached, the sum stipulated

in the contract as liquidated damages is actually a penal sum.

Plaintiff, therefore, having properly raised in his alternative count the issue of whether the sum deposited constitutes liquidated damages or a penalty, we must decide whether, on the basis of the pleadings, it can be stated as a matter of law that this sum is one or the other.

The guiding principle in such cases was summarized in the case of Streeper v. Williams, 48 Pa. 450, 454, as follows:

". . . Upon the whole, the only general observation we can make is, that in each case we must look at the language of the contract, the intention of the parties as gathered from all its provisions, the subject of the contract and its surroundings, the ease or difficulty of measuring the breach in damages, and the sum stipulated, and from the whole gather the view which good conscience and equity ought to take of the case. Equity lies at the foundation of relief in the case of forfeiture and penalties, and hence the difficulty of reaching any general rule to govern all cases."

Normally, in cases of this kind, courts are not prone to label as a penal sum that which the parties designated as liquidated damages, for ". . . of all facts difficult to establish the value of land is one of the most difficult, and for that reason covenants liquidating the damages in such cases, when not unconscionable, will be enforced by the courts": Ellis v. Roberts et ux., 98 Pa. Superior Ct. 49, 59.

Since, however, all of the circumstances and equities must be taken into consideration in determining whether a particular sum is liquidated damages or a penalty, such a question should not be decided on the pleadings unless all of the equities and circumstances are so clearly in favor of one party or the other that only one possible determination can be reached.

In the instant case, although the equities seem to preponderate in favor of defendant, we do not think it proper to decide the issue on the pleadings. One of the circumstances which must be considered in cases of this sort, although not necessarily the decisive factor, is the relationship which the sum in question bears to the purchase price. In the instant case, even if we only consider the initial deposit of $5,000, nevertheless, this sum is approximately 21 percent of the total purchase price of $23,400, a percentage higher than normally found in such contracts, and higher than that found to be a penal sum in Ellis v. Roberts, supra. Further, there is a fact issue under the pleadings as to whether defendant resold the property in question for a sum equal to or greater than the purchase price agreed upon between plaintiff and defendant, as averred by plaintiff, or whether, as defendant avers, the subsequent sale by defendant was for such an amount that, even if defendant were permitted to retain the sums paid by plaintiff on account of the purchase price as liquidated damages, defendant would still sustain a loss of $1,411.83 by reason of plaintiff's noncompliance with the contract. The determination of this fact issue might well be relevant to the decision of whether the deposit money retained by defendant is liquidated damages or a penal sum. This case, therefore, would appear to be one more properly to be decided after all the evidence has been introduced, so that the court may then be in a better position to decide whether, under all the circumstances and equities, the sum deposited constitutes, under the above-mentioned criteria, liquidated damages or a penalty.

Accordingly, it is hereby ordered that defendant's motion for judgment on the pleadings is sustained as to the first count in plaintiff's complaint and is dismissed as to the alternative count in plaintiff's complaint.