Tillie B. STEIN, Administratrix of the Estate of Oscar Stein, Deceased, Appellant,

v.

Oscar C. BRUCE and Ruth Y. Bruce, Respondents.

No. 23675.

Kansas City Court of Appeals.

Missouri.

April 1, 1963.

Harry T. Limerick, Jr., and James A. McGee, Columbia, for appellant.

George A. Spencer and Roger D. Hines, Columbia, for respondents.

CROSS, Judge.

Plaintiff administratrix appeals from the trial court's order and judgment sustaining defendants' motion to dismiss her petition on the ground that it fails to state a cause of action upon which relief can be granted.

The petition is in two counts. Count one contains allegations to the following effect: Plaintiff is the administratrix of the estate of her deceased husband, Oscar Stein, by authority of appointment made by the Orphans' Court of Philadelphia, Pennsylvania. On or about September 9, 1954, Oscar Stein entered into a real estate sales contract with agents acting on behalf of defendants whereby he agreed to purchase property located in the State of Pennsylvania for the total sum of $19,000.-00. The contract provided for a total down payment of $1900.00 and required a final settlement by the payment of the purchase price balance of $17,100.00 on or before December 9, 1954. In so providing, the parties stipulated in the contract that "Said time is hereby agreed to be the essence of the agreement", and that, "Should the buyer fail to make settlement as herein provided, the sum or sums paid on account are to be retained by the seller, either on account of the purchase money, or as compensation for the damages and expenses he has been put to in this behalf, as the seller may elect". The contract also contains the following clause: "This agreement to extend to and be binding upon the heirs, executors, administrators and assigns of the parties hereto".

Oscar Stein made the $1900.00 down payment as was agreed but did not pay the purchase price balance on or before December 9, 1954, as the contract provided. Instead, he entered into a supplemental agreement with defendants whereby, in consideration of $1000.00 paid to them, the closing date of the sale was extended to December 31, 1954, and it was agreed "to arrange for a loan of $6000.00". Oscar Stein died on December 24, 1954.

Plaintiff further alleges in count one that under the laws of Pennsylvania it was impossible in the ordinary course of administration to have appointed an administratrix for the estate so as to "close the deal" as agreed by deceased; that plaintiff widow, of Jewish faith, in the observance of a Jewish ritual of mourning, was required to remain in the house seven days after her husband's death; that after letter of administration were granted to plaintiff on January 4, 1955, her attorney's request for an additional extension of time for fulfillment of the contract was refused by defendants; that thereafter plaintiff offered to purchase the property under the contract terms, but learned that it had been sold to another purchaser for $19,000.00; that on January 26, 1955, plaintiff demanded the return of

the total sum of $2900.00, and defendants refused to return that sum or any part of it. The prayer of count one is a naked request for judgment against defendants in the sum of $2900.00, with interest, and for costs.

The allegations of count two are identical with those set out in count one except for the addition of one further paragraph to the effect that if there was a breach of the contract because of the buyer's untimely death and the inability of the estate to carry out the contract according to its terms, "then it would be a penalty and unconscionable" for the defendants to retain the $2900.00 since the property was resold for the same sale price within a short space of time. Count two contains the alternative prayer for judgment, "if it is determined there was a breach of contract", for return of the $2900.00 paid under the contract(s), less any actual damages sustained by defendants as a result of the contract's breach.

Preliminarily, we deem it appropriate to say of count one that it contains no allegation that defendant breached the contract or that plaintiff was damaged. Plaintiff merely prays for judgment without pleading any specific legal justification therefor. Nonetheless, plaintiff contends that count one states a cause of action, first, on the theory that there was no breach of the contract on her part or by the original vendee. Plaintiff argues that the time for performance of the contract was extended by her husband's death because "certainly the delay caused by a man dying could not be considered a wilful breach of contract". Therefore, says plaintiff, she is entitled to the return of the entire $2900.00.

▇▇▇ Plaintiff's view of the law in respect to the effect of death of one of the parties to a contract is not in harmony with settled legal principles. It is the general rule that when a person by his contract charges himself with an obligation possible to be performed, *he must perform it,* unless its performance is rendered impossible by the

act of God, by the law, or by the other party. In case a party desires to be excused from performance in the event of contingencies arising, it is his duty to provide therefor in his contract. 17 C.J.S. Contracts § 459, pp. 946–947; Bronstein v. First National Bank of Pittsburg, 30 Pa.Dist.R., 177; Ellis Gray Milling Co. v. Sheppard, 359 Mo. 505, 222 S.W.2d 742. In the last cited case it is stated that "if a party, by his contract, charge himself with an obligation possible to be performed, he must make it good unless its performance is rendered impossible by act of God, the law, or the other party. Unforeseen difficulties, however great, will not excuse him".

▇▇▇ It may be conceded that, as a general rule, contracts to perform *personal* acts are considered as made on the implied condition that the party shall be alive and capable of performing the contract, so that death or disability will operate as a discharge. 17 C.J.S. Contracts § 465, p. 957. However, the foregoing rule does not apply where the acts are of such a character that they may as well be performed by others, as by the promisor's personal representatives, or where it is apparent from the terms of the contract that performance by others was contemplated. The death of a party does not excuse nonperformance of a contract embodying a personal right which passes to the personal representatives of the deceased party. 17 C.J.S. Contracts § 465, p. 959; In re Book's Estate, 297 Pa. 543, 147 A. 608; Young v. Gongaware, 275 Pa. 285, 119 A. 271; In re Troutwine's Estate, 117 Pa.Super. 525, 178 A. 302.

▇▇▇ The contract in this case did not require Oscar Stein to perform any act of a personal nature. Furthermore, the contract clause reading, "This agreement is to extend to and be binding upon the heirs, executors, administrators and assigns of the parties hereto", clearly reveals that the parties intended, in the eventuality of either's death, that the agreement would be performed on his behalf by one (or more) of the persons named in the quoted provi-

sion. Therefore, it must be held that when Oscar Stein died the contract became binding upon this plaintiff as his successor. The unfortunate death of Mr. Stein did not halt the contract's operation, or nullify its specific provision that "time (was) to be of the essence". It was still incumbent upon the administratrix to satisfy the terms of the agreement within the time agreed upon by the original parties.

Plaintiff has exhibited no authority to the effect that the time for performance of a contract may be extended because of the death of a contracting party and the resulting necessity for and delay incident to administration. Purdon's Penna. Statutes Annotated, Title 20, Sections 320.501 and 320.603, cited by plaintiff, do not so provide. Section 320.501 merely provides that a personal representative has the right to take possession of and administer the decedent's estate. The general import of Section 320.603 is that an action to enforce any right or liability which survives a decedent may be brought by or against his personal representative. These provisions are no more than legal declarations of the rights and duties which the parties to the contract provided for by their own agreement. Plaintiff also cites McDaniel v. Rose, Mo.App., 153 S.W.2d 828. The case is not in point. The contract considered there was for personal services to be rendered to the decedent, and the court held that it was unenforcible against the estate after the decedent's death.

We find no merit in the contention above considered.

 Plaintiff additionally argues that count one of the petition states a cause of action on the ground that it alleges facts from which it can be found that the sum named in the contract as liquidated damages is unreasonably large, and that it must therefore be considered as a penalty and

void. Under such findings, plaintiff insists, she would be entitled to recover of defendants the entire "down payment" of $2900.00. The contract in question was executed in Pennsylvania and the land was located in that state. All the parties to the contract lived in Pennsylvania. Therefore, our determination of the instant question depends upon whether the down payment in issue is held to be liquidated damages or a penalty under law applicable in the State of Pennsylvania. The issue is a question of law to be resolved by our construction of the contract. 25 C.J.S. Damages § 102, p. 657; Laughlin v. Baltalden, Inc., 191 Pa.Super. 611, 159 A.2d 26.

 The term "liquidated damages" signifies the damages, the amount of which the parties to a contract stipulate and agree, when the contract is entered into, shall be paid in case of breach. As distinguished from liquidated damages, a penalty is a sum inserted in a contract, not as a measure of compensation for its breach, but rather as a punishment for default, or by way of security for actual damages which may be sustained by reason of nonperformance, and it involves the idea of punishment. 15 Am.Jur., Damages, Sec. 240, p. 671.

In determining whether contractual provisions are to be interpreted as providing for liquidated damages or for a penalty, the courts have enumerated various tests, criteria and factors to be considered.[1] In the recent case, Laughlin v. Baltalden, Inc., 191 Pa.Super. 611, 159 A.2d 26, the Supreme Court of Pennsylvania restates the rules generally applicable to the present inquiry, as follows:

"The name by which such a clause may be called is but of slight weight, and the controlling elements are the intention of the parties and the special circumstances of the case. Keck v. Bieber, 148 Pa. 645, 646, 24 A. 170. As restated by the Supreme Court in Com-

---

1. See: Annotation, Provision in land contract for forfeiture of payments as one for liquidated damages or penalty. 6 A.L.R.2d 1401.

monwealth v. Musser Forests, Inc., 394 Pa. 205, 146 A.2d 714, 717, the question is to be determined 'by the intention of the parties, drawn from the words of the whole contract, examined in the light of its subject matter and its surroundings; and that in this examination we must consider the relation which the sum stipulated bears to the extent of the injury which may be caused by the several breaches provided against, the case or difficulty of measuring a breach of damages, and such other matters as are legally or necessarily inherent in the transaction.' See also, Emery v. Boyle, 200 Pa. 249, 49 A. 779; Vrooman v. Milgram, [124 Pa. Super. 145, 188 A. 538] supra. Real estate transactions, involving breaches in performance, are peculiarily within that class of cases where the measure of damages is difficult to ascertain. It is for that very reason that the practice has developed of inserting in sales agreements a sum certain, agreed to by the parties, as the amount which will be considered as compensation for a breach in performance. This may be the amount of the deposit or hand money, or it may be a sum in a lesser or greater amount, depending upon the consideration involved. Generally, we have held that where a purchaser repudiates an agreement of sale of real estate containing a provision for liquidated damages, the vendor is entitled to the sum agreed upon as liquidated damages. Tudesco v. Wilson, 163 Pa. Super. 352, 60 A.2d 388. Where the obligation to purchase has been repudiated, especially where new construction is involved, the vendor usually has the continuing obligation of paying interest on any construction loan, insurance, taxes, broker's commission, maintenance charges and utilities until the property is actually sold".

The foregoing quoted statement is essentially a composite of judicial expression contained in earlier Pennsylvania cases which include Keck v. Bieber, 148 Pa. 645, 24 A. 170; Kunkle et al. v. Wherry, 189 Pa. 198, 42 A. 112; Kraft v. Michael, 166 Pa.Super. 57, 70 A.2d 424; Lichetti v. Conway, 44 Pa. Super. 71; Ellis v. Roberts et ux., 98 Pa. Super. 49; and Sautter v. Rowland, 285 Pa. 212, 131 A. 733.

■ The clear language of the contract and the circumstances surrounding the transaction import that the parties intended to stipulate for the retention of the down payment sum as liquidated damages and not as a penalty. That they so intended is strongly supported by the fact that the sale of real estate was the subject matter of the contract. "Damages arising from a breach of a contract for the purchase or sale of real estate are usually so uncertain and difficult of ascertainment that the tenancy of the courts generally has been to sustain covenants of the parties liquidating the damages in such cases, unless they are unconscionable or grossly disproportionate to the injury provided against". Ellis v. Roberts et ux., 98 Pa.Super. 49. And, as the court said in Lichetti v. Conway, 44 Pa.Super. 71, "Of all facts difficult to establish, however, the value of land is one of the most difficult; in many neighborhoods sales of land are not frequent and no two persons will precisely agree as to the value thereof. Covenants of the parties liquidating the damages in such cases, when not unconscionable, will be enforced by the courts". Under the foregoing principles of law which govern our deliberations, we must assume that the actual damages resulting from the breach of the real estate sales contract in this case are uncertain in amount and difficult to ascertain or prove, particularly since there is nothing in the contract that furnishes a guide for the determination of damages. Therefore, it will be our duty to hold that the stipulated sum is for liquidated damages *unless we determine it to be unreasonable in amount as a forecast of probable damages and disproportionate to the amount of damages that could probably result from the breach.* We next consider that question.

The amount stipulated in the contract as liquidated damages to be forfeited in event of its breach is the sum of $1900.00—exactly 10% of the purchase price. It is not, as plaintiff assumes, the sum of $2900.00. The sum of $1000.00 paid by Oscar Stein on (or about) December 9, 1954, three months after the contract was executed, did not represent a stipulated down payment nor was it stipulated to be a sum representing liquidated damages. That sum was paid to defendants as consideration for the extension of time granted for performing the contract—the price of forbearance on the part of defendants from declaring a forfeiture on the part of the purchaser at the termination of the original three month contract period.

We do not believe that an amount representing 10% of the total purchase price is an unreasonable provision for liquidated damages in this case, or that it is disproportionate to the probable damages defendants suffered by the breach of the contract. It is apparent from the record that defendants had engaged real estate agents to sell the property and that the sale was effected through them. It is a reasonable inference that defendants were obligated by contract to pay those agents a commission for selling the real estate, that the commission was in fact paid, and further, that it represented a substantial portion of the 10% down payment retained after the breach. Furthermore, defendants were burdened by the contract for almost four months. During that interim their property was necessarily "off the market". They were constrained by the contract to reject all other offers of purchase, and forego any opportunity presented to sell it for a higher price. Meanwhile, they were subject to the outlay of money for maintenance of the property and for any continuing obligation such as interest, insurance, taxes, maintenance charges and utilities. Additionally, defendants were deprived of the use of their money and the opportunity of its investment.

We find ample precedent in Pennsylvania cases for ruling that 10% of the purchase price is a reasonable stipulation for liquidated damages. See: Kraft v. Michael, 166 Pa.Super. 57, 70 A.2d 424; Tudesco v. Wilson, 163 Pa.Super. 352, 60 A.2d 388; Sautter v. Rowland, 285 Pa. 212, 131 A. 733, and Laughlin v. Baltaldin, Inc., supra.

We have duly considered the cases and authority cited by plaintiff, but do not find them persuasive on the present question. Plaintiff cites certain sections of statute law from Purdon's Penna. Statutes Annotated and urges them as authority for holding that the down payment in this case is a penalty and therefore void. The cited statutes are a part of Pennsylvania's Uniform Commercial Code which applies only to the sale of personal property. We reject them as authority on the issue in this case arising from the sale of real estate.

In view of all the foregoing, it is our conclusion that count one is barren of any allegation upon which relief can be afforded plaintiff.

What we have said relative to the sufficiency of count one necessarily disposes of plaintiff's contention that count two states a cause of action. The gravamen of count two is that the retention of the stipulated down payment sum as liquidated damages would be unconscionable, and that such sum amounts to a penalty instead. Since we have decided these questions otherwise, it is also our ruling that plaintiff has stated no cause of action in count two.

One additional issue has been raised by defendants. They contend that plaintiff has no legal capacity to institute suit in Missouri. Defendants insist that plaintiff's authority under letters of administration granted in the State of Pennsylvania does not include the extraterritorial power to prosecute an action in a foreign state, and that the State of Missouri has not provided by law that she may bring suit in the courts of this state. However, it is not necessary that we decide the question, since it has

been determined that plaintiff alleges no cause of action in her petition.

The judgment is affirmed.

All concur.