In re Richard E. CREMEN and Shirley R. Cremen a/k/a Shirley R. Young, Debtors.

Sterling C. SAUBLE and Mary Euphemia Sauble, his wife, Plaintiffs,

v.

Richard E. CREMEN and Shirley R. Cremen, Defendants,

v.

Robert W. NESS and Susan K. Ness, Additional Defendants.

No. 1–81–00923.

United States Bankruptcy Court, M.D. Pennsylvania.

Nov. 16, 1983.

Timothy P. Ruth, Stock & Leader, York, Pa., for plaintiffs.

Donald Swope, York, Pa., for Ness.

John W. Thompson, York, Pa., Trustee.

Daniel Fennick, Central Pennsylvania Legal Services, York, Pa., for defendants.

## MEMORANDUM

### CONTRACT DAMAGES

ROBERT J. WOODSIDE, Bankruptcy Judge.

On September 25, 1981, the plaintiffs, Sterling C. Sauble and May Euphemia Sauble (Saubles), filed a complaint for relief from the automatic stay to execute on a judgment against the debtors (Richard A. and Shirley R. Cremen) (debtors). On October 13, 1981, the debtors filed an answer asserting an affirmative defense, counterclaim, and third-party claim. The debtors and the Saubles settled their automatic stay dispute, but a dispute remains as to a third-party claim between the debtors and Robert W. Ness and Susan K. Ness (Nesses), the third party defendants. The dispute is as to whether the debtors are entitled to a partial refund of monies kept as liquidated damages after their default on an installment sale contract for real estate. The parties stipulated to the facts and documents, and briefed the legal issue to be decided.

### FACTS

On or about December 27, 1979, the debtors entered into a sales agreement for the purchase of real estate from the Saubles and Nesses.[1] Paragraph 1 of the agree-

---

1. The Nesses originally had purchased the real estate from the Saubles, the plaintiffs, on a

ment provided for the amount and method of payment as follows:

The purchase price shall be thirty-eight thousand dollars ($38,000), payable as follows:

(a) Two thousand six hundred twenty dollars ($2,620.00), in cash, payable to Ness upon the execution of this Agreement, the receipt of which is hereby acknowledged;

(b) The balance of thirty five thousand three hundred forty dollars ($35,340.00) as follows;

(1) Buyers shall pay to Sauble the sum of twenty two thousand seven hundred ninety two dollars and eighty four cents ($22,792.84), with interest at 12.5% per annum, in ten (10) equal monthly installments of two hundred seventy dollars and three cents ($270.03) on account of interest and principal, beginning with the first payment upon the execution of this Agreement and continuing on the first day of each month until September 1, 1980, when the full amount of the unpaid principal balance, with accrued interest, shall be paid in full.

(2) Buyers shall pay to Ness the sum of twelve thousand five hundred forty seven dollars and sixteen cents ($12,547.16), with interest at 11% per annum, on September 1, 1980.

(3) Buyers shall pay to Sauble, in escrow, together with each monthly payment of principal and interest an amount equal to one-twelfth of the annual taxes.

The Cremens paid the $2,620.00 to the Nesses pursuant to the Agreement and thereafter paid a total of $3,900 to the Saubles under provision 1(b)(1). These payments to the Saubles were made over a period of time from December of 1979 until November of 1980. The Cremens then discontinued payments; and, on January 21, 1981, the Saubles brought an action in ejectment against the Cremens for failure to pay the amount called for in the agreement, and subsequently repossessed the property. The Cremens did not pay to the Nesses the $12,547.16 required by the agreement to be paid on September 1, 1980.

Paragraph 14 of the agreement provided:

In the event Buyers (Cremens) default in payment of any sum of principal or interest to SAUBLE, as herein provided, *Ness shall have the option to terminate CREMEN'S interest in this Agreement, retain all sums paid on account by CREMEN to NESS, and to make the payments as herein provided to SAUBLE. In such case, payments made on account by CREMEN shall be considered liquidated damages for the breach of said Agreement, and the amount of the principal payments made by CREMEN to SAUBLE shall be credited to the amount owed by NESS to SAUBLE as such time when final settlement would be made between SAUBLE and NESS.* (Emphasis added).

## DISCUSSION

Paragraph 14 of the agreement provides an optional remedy available to the Nesses, not an exclusive remedy. The liquidated damages provision appears to be a remedy available on the exercise of that option. Since the Saubles repossessed the property, the option available to the Nesses was not exercised.[2]

The Cremens assume the validity of the liquidated damage provision in this contract but argue that the case law of Pennsylvania establishes that 10% of the purchase price is

sales agreement. The Nesses then resold the real estate to the Cremens on a sales agreement. That sales agreement subordinated the Nesses interest to that of the Saubles in the event of a default because the Saubles, holders of the fee simple, are entitled to repossession of the real estate if the Nesses fail to cure the Cremens' default. Therefore, the Nesses were joined as additional defendants in the automat-ic stay action and subsequently became defendants in the third-party claim.

2. The stipulation of facts is silent as to why the Nesses failed to exercise their option under paragraph 14 of the agreement which would have allowed them to assume the Cremen's payments and repossess the property.

the highest permissible amount allowable. They advance this argument primarily relying on the case of *Kraft v. Michael,* 166 Pa.Super. 57, 70 A.2d 424 (1950). That case indicates that a liquidated damage clause was unacceptable if it awarded damages disproportionate to the actual loss under the circumstances. The court in the *Kraft* case relied on *Ellis v. Roberts,* 98 Pa.Super. 49 (1930) which held that a provision in a confession of judgment clause which called for liquidated damages of 15% was a penalty and void but that a 10% liquidated damages clause was acceptable.

The gravamen of the Cremen's argument is that although the total purchase price was $38,000, the Nesses were only to receive the sum of $12,547.11 so that they should only be able to retain 10% of that sum or $1,254.72 and should be ordered to return the balance of the down payment money in the amount of $1,365.30 to the Cremens. There is a factual inaccuracy to this argument for it fails to recognize the $2,620 paid to the Nesses on execution of the agreement. In other words, the total amount the Nesses were to receive under the agreement was $15,167.16; $2,620 on the signing of the agreement and the balance of $12,547.11 to be paid on September 1, 1980.

The Nesses expectations were to receive $15,167.16 for their interest in the real estate. They now find themselves in the position of having received only $2,620 for that interest without the ability to resell the real estate because the Saubles have repossessed it. We think that the equities are clearly in favor of the Nesses.

We also think that in addition to the equities the law favors the Nesses. It is clear that liquidated damage clauses have been enforced "when the clause computes the damages liquidated as the actual loss sustained, . . . ." *Langoma Lumber Corp. v. U.S.,* 140 F.Supp. 460, 463 (E.D.Pa.1955), affirmed 232 F.2d 886 (3rd Cir.1956). In the case at bar, the down payment of $2620 paid to the Nesses indeed represents a portion of the actual losses incurred by them upon the Cremens' default.

In a similar case, the Third Circuit in construing a liquidated damage's clause upheld a master's alternative ground for awarding damages. The alternative ground was based on the principal of Pennsylvania law that a defaulting party may not recover payments made on a contract. *In re Oscar Nebel Co.,* 117 F.2d 326, 328 (3rd Cir.1941). This controlling principal of Pennsylvania law was set forth in the case of *Sanders v. Brock,* 230 Pa. 609, 79 A. 772 (1911) as cited by the Nesses in pertinent part as follows:

No rule in respect to the contract is better settled . . . than this that the party who has advanced money, or done an act in part-performance of the agreement, and then stops short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfil (sic) all his stipulation according to the contract, will not be permitted to recover back what has thus been advanced or done.

*Sanders,* 203 Pa. at 614, 615, 79 A. 772 (citing *Hansbrough v. Peck,* 72 U.S. (Wallace 5) 497, 506, 18 L.Ed. 520 (1886)); *See also, Roberts v. Roesch,* 306 Pa. 435, 159 A. 870 (1932); and, *Kaufman Hotel & Restaurant Company v. Thomas,* 411 Pa. 87, 190 A.2d 434 (1963).

## CONCLUSION

We find that part-performance has occurred between the debtors and the Nesses. The debtors had possession of the real property and the Nesses have received payment in the sum of two thousand six hundred twenty dollars ($2,620.00). And the debtors having failed to proceed to the ultimate conclusion of the sales agreement, we conclude that the Nesses are entitled to keep the $2,620 tendered to them from the debtors as part-performance. Accordingly, we will enter an appropriate order. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 752.